UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| C-VILLE FABRICATING, INC. dba Tarter Industries, *et al.*, <br><br> **Plaintiffs,** <br><br> V. <br><br> **JOSHUA DONALD TARTER**, *et al.*, <br><br> **Defendants.** | CIVIL ACTION NO. 5:18-379-KKC <br><br><br> OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the court on Plaintiffs' Tarter Industries and Anna Lou Tarter Smith, LuAnn Coffey, and Douglas Tarter, in their derivative capacities, motion to dismiss Defendant Joshua Tarter's counterclaims (DE 45), and Josh's motion for leave to join David Tarter as a counter-defendant (DE 36). In their motion to dismiss, Plaintiffs argue, *inter alia*, that Josh lacks the requisite standing to bring the counterclaims. For the reasons stated below, the Court grants Plaintiffs' motion to dismiss and, accordingly, denies Josh's motion for leave to join David Tarter as a counter-defendant as moot.

## Background

### I. The Tarter Companies and the Alleged Scheme

Much of the relevant factual background in this case is discussed in the Court's March 26, 2019 Order and Opinion, *C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-cv-379-KKC, 2019 WL 1368621 (E.D. Ky. Mar. 26, 2019), and is therefore only briefly summarized here. Through various entities, the Tarter family operates a large animal management and farm gate manufacturing business. Principally at issue in this case are four of the family's business

1

entities: C-Ville Fabricating, Inc. (doing business as Tarter Industries), Tarter Management, Tarter Gate, and Tarter Tube ("Tarter Companies"). Tarter Industries and Tarter Management are organized as corporations; Tarter Gate and Tarter Tube as limited liability companies. At all relevant times, the ownership stakes in the Tarter Companies have been held, in shifting portions, by the following Tarter family members: David Tarter and his ex-wife, Anna Lou Tarter Smith; their children, Douglas Tarter and LuAnn Coffey; David's brother, Donald Tarter, and Donald's wife, Joy Tarter; and their children, Keith Tarter, Joshua Tarter, and Nell Tarter Duggins.

Josh is a shareholder of Tarter Industries and Tarter Management, and a member-manager of Tarter Gate and Tarter Tube. Plaintiffs contend that at all relevant times, Josh held himself out as a high-ranking executive of the Tarter Companies and oversaw their operation. Plaintiffs also allege that Josh's right hand man was fellow Defendant Thomas Lewis Gregory; although his official job description included general management duties for Tarter Gate, Plaintiffs contend that Thomas's oversight extended much further.

In August of 2017, Anna Lou, LuAnn, and Douglas brought suit in both their individual capacities and derivative capacities on behalf of the Tarter Companies.[1] The thrust of their allegations was that Josh, Thomas, and an individual named Xiaofeng Chen incorporated QMC Industry Company, LTD ("QMC") in Hong Kong, and that Josh and Thomas used their senior positions with the Tarter Companies to ensure that components and parts were sourced from QMC, while siphoning Tarter funds to themselves through inflated rates for the purchased components. The scheme allegedly resulted in the Tarter Companies wiring approximately $74,857,122.80 to QMC and its affiliates. Plaintiffs assert that during this period, Josh and Thomas hid their interests in QMC – despite a duty to

---

[1] In the original litigation, Plaintiffs also brought suit on behalf of Green River Gate, Inc. and Liberty Tank, LLC. *Smith v. Tarter*, 305 F. Supp. 3d 733, 736 n.1 (E.D. Ky. 2018).

reveal that information – and that Josh affirmatively lied about such interests on two occasions.

## II. Procedural History

The original complaint was dismissed without prejudice by Judge Danny Reeves, who found that Plaintiffs had failed to establish either individual or derivative standing. *Smith v. Tarter*, 305 F. Supp. 3d 733, 744 (E.D. Ky. 2018). Following the dismissal, Anna Lou, LuAnn, and Douglas sent demand letters to every individual who might be either a director or member-manager of the four Tarter Companies. Further, the board of directors for Tarter Industries allegedly passed a resolution authorizing the corporation to file a lawsuit against Defendants. On June 5, 2018, a second complaint was filed by Tarter Industries and Anna Lou, LuAnn, and Douglas, in their individual capacities and in their derivative capacities on behalf of the Tarter Companies; Josh, Thomas, and QMC were again named as Defendants. On August 20, 2018, both Josh and Thomas moved to dismiss the second complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). As a result of the Court's March 26 Order and Opinion, which granted in part and denied in part the motions, Tarter Industries and Anna Lou, LuAnn, and Douglas – in only their derivative capacities – were allowed to proceed against Defendants on the following claims:

1) Count I: RICO Violations (18 U.S.C. § 1962(c)) – against all Defendants
2) Count II: Conspiracy to Violate the RICO Statutes (18 U.S.C. § 1962(d)) – against Defendants Joshua Tarter and Thomas Gregory
3) Count III: Violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836) – against all Defendants
4) Count VI: Violation of Kentucky's Uniform Trade Secrets Act ("KUTSA") (KRS § 365.880) – against all Defendants

3

5) Count VIII: Conspiracy to Commit the Misappropriation of Trade Secrets Pursuant to the KUTSA – against all Defendants

6) Count IX: Breach of Fiduciary Duty – against Defendants Joshua Tarter and Thomas Gregory

7) Count X: Aiding and Abetting Joshua Tarter's Breach of Fiduciary Duty – against Defendants Thomas Gregory and QMC.

8) Count XI: Fraudulent Misrepresentation – against Defendant Joshua Tarter

9) Count XII: Fraudulent Concealment/Fraud by Omission – against all Defendants

10) Count XIII: Usurpation of Corporate Opportunity – against Defendants Joshua Tarter and Thomas Gregory

11) Count XIV: Unjust Enrichment – against all Defendants

On April 19, 2019 Josh filed an answer to the complaint and counterclaims against Anna Lou, LuAnn, Douglas, and David Tarter (DE 35), and a separate motion for leave to join David as a counter-defendant (DE 36). Josh brings his counterclaims as a shareholder derivative action on behalf of what he calls the "Tarter Entities" – the four Tarter Companies, plus Green River Gate, Inc. (DE 35 at 51.)[2] Josh did not make a demand for action on any of the governing bodies of the Tarter Entities before he filed the counterclaims, alleging that such a demand would be futile. (DE 35 at 55.) On May 20, 2019 Plaintiffs filed a motion to dismiss the counterclaims pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) (DE 45) and a response in opposition to the motion for leave to join David as a counter-defendant (DE 46).

---

[2] According to Josh, Green River Gate is a Kentucky corporation with its headquarters in Casey County. (DE 35 at 54.) It is unclear under what authority – proper or otherwise – Josh seeks to involve Green River Gate as a party to this action.

4

## Analysis

**I. Motion to Dismiss the Counterclaims**

As an initial matter, the Court harbors serious doubts that Josh's counterclaims conform to the requirements of FED. R. CIV. P. 13. That rule provides a vehicle for a pleader to bring a claim against an "opposing party;" it would strain the principles of derivative suits to call Josh's aunt and cousins his "opposing parties" in this action, when it is supposedly being litigated on behalf of the Tarter Companies. The issue is ignored by the parties, who are evidently so consumed with the personal nature of this dispute that they seem to have lost sight of the true purposes of a derivative suit. However, the case law appears to support the logical conclusion that plaintiff shareholders in a derivate suit are not "opposing parties" for counterclaim purposes. "Although not addressed by the Sixth Circuit, other circuits have held that 'opposing party' requires that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity." *Kreamer Sports, Inc. v. Rocky Brands, Inc.*, No. 2:06cv576, 2007 WL 1144865, at *4 (S.D. Ohio Apr. 16, 2007) (citation and some internal quotation marks omitted).[3] "It is well settled that plaintiffs in stockholder derivative actions suing in a representative capacity are not 'opposing parties' and therefore cannot be the subject of personal counterclaims." *Vernon J. Rockler & Co. v. Minneapolis S'holders Co.*, 69 F.R.D. 1, 3 (D. Minn. 1975); s*ee also Tryforos v. Icarian Dev. Co.*, 49 F.R.D. 1, 3 (N.D. Ill. 1970).[4] "These cases rest on the assumption that the cause which a plaintiff brings in a derivative action is not his own but the corporation's." *Rockler*, 69 F.R.D. at 3. But, since it does not appear as though this narrow issue has been explicitly addressed in

---

[3] Although *Kreamer Sports* discusses two "recognizable exceptions" to the general principle, it is unclear if either would apply to the facts here. *Kreamer Sports*, 2007 WL 1144865, at *4.

[4] *Tryforos* identifies another exception to the general principle, which is also not clearly applicable here: "situations involving a closely held corporation where *all* the shareholders are before the court." *Tryforos*, 49 F.R.D. at 3 (emphasis in original).

5

binding Sixth Circuit precedent, and because the parties have neglected to discuss it, the Court will resolve the motion on another ground.

In their motion to dismiss, Plaintiffs make four primary arguments: that Josh (1) lacks the requisite standing to bring a derivative suit; (2) fails to state a viable cause of action; (3) has engaged in impermissible group pleading; and (4) has made false allegations. (DE 45 at 2.) Because the first argument is sufficient to grant Plaintiffs' motion, the others need not be addressed.

### *A. Standard*

"Standing goes to a court's subject matter jurisdiction." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (citation, internal quotation marks, and brackets omitted). As such, a court may dismiss a suit for lack of subject-matter jurisdiction under Rule 12(b)(1) if the plaintiff lacks standing to bring the action. *See Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013) (observing that the lack of standing is treated as an attack on subject-matter jurisdiction and is therefore considered under Rule 12(b)(1)). "When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists." *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011) (citation omitted).

### *B. Discussion*

Plaintiffs argue that Josh is not a proper representative for this action. (DE 45 at 6-8.) Under FED. R. CIV. P. 23.1(a), a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." A failure to satisfy Rule 23.1's statutory prerequisites warrants dismissal for lack of standing

under Rule 12(b)(1).[5] *Smith*, 305 F. Supp. 3d. at 744. Under Sixth Circuit law,[6] there are eight factors to consider when determining if a plaintiff is a fair and adequate representative: (1) "economic antagonisms between representative and class;" (2) "the remedy sought by plaintiff in the derivative action;" (3) "indications that the named plaintiff was not the driving force behind the litigation;" (4) "plaintiff's unfamiliarity with the litigation;" (5) "other litigation pending between the plaintiff and defendants;" (6) "the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself;" (7) "plaintiff's vindictiveness toward the defendants;" and (8) "the degree of support plaintiff was receiving from the shareholders he purported to represent." *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir. 1980). Although courts frequently look to a combination of these factors when making the determination, "a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion." *Id.* at 593.

The Court finds that Josh is not a fair and adequate representative under Rule 23.1. Although the counterclaims have supposedly been brought "on behalf of and for the benefit of" the Tarter Entities (DE 35 at 51), Josh is the litigation adversary of these organizations,

---

[5] The Court relies on this principle, assumed in the prior iteration of this litigation, and apparently adopted and uncontested by the parties, with some hesitancy. As to at least one of Rule 23.1's requirements – specifically, the demand requirement – the Ninth Circuit has held that, because such a requirement "is an element of prudential statutory standing rather than constitutional Article III standing," it is more appropriately "raised in a FED. R. CIV. P. 12(b)(6) motion.*" Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1087 n. 6 (9th Cir. 2011) (noting also that "Article III standing may be raised in a FED. R. CIV. P. 12(b)(1) motion"), *vacated on other grounds*, 566 U.S. 221 (2012). The Sixth Circuit's view is not entirely clear. In *Loren v. Blue Cross & Blue Shield of Mich.*, that court held that "a plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." 505 F.3d 598, 606 (6th Cir. 2007) (citation omitted). In *Roberts v. Hamer*, however, the Sixth Circuit admonished the litigants for having "confused the questions of constitutional and prudential standing with *statutory* standing," noting that question of statutory standing "is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case." 655 F.3d 578, 580 (6th Cir. 2011) (citations omitted) (emphasis in original). The *Hamer* court held that, "[w]here a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." *Id.* at 581.

[6] Federal law governs the determination of "whether a particular shareholder meets the adequacy-of-representation requirement." 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1833 (3d ed. 2008).

7

and his interests conflict with theirs. *See, e.g., Love v. Wilson*, No. CV 06-06148 ABC (PJWx), 2007 WL 4928035, *6 (C.D. Cal. Nov. 15, 2007). An individual who "attempts to occupy simultaneously the position of a defendant sued by the corporation and that of a shareholder seeking to advance the interest of this corporation" assumes a (at the very least) "contorted position," and one that runs counter to the "equitable principles that form the basis for all stockholders' derivative suits." *Darrow v. Southdown, Inc.*, 574 F.2d 1333, 1337 (5th Cir. 1978). In his defense on this issue, Josh cites to *Vanderbilt v. Geo-Energy, Ltd.*, 725 F.2d 204 (3d Cir. 1983). (DE 55 at 19.) However, that court, in the relevant part, merely held that "less weight should be given to a corporate defendant's claim for the disqualification of the representatives of the shareholder class where the corporate defendant was the one who initiated the litigation about which it now complains." *Id.* at 208. That opinion also notes that, even if it is not the norm, "there may be some circumstances in which a suit brought by a corporation against a shareholder creates, in that shareholder, interests significantly antagonistic to the shareholder class." *Id.* In its reasoning, the court in *Vanderbilt* relied on the principle that "he who is the first to enter the courthouse door and thereafter forces others to follow should not be permitted to use his own litigiousness as a basis to preclude others from suing him." *Id.* This principle – even if it were binding precedent here – does not disturb this Court's finding that Josh is not a proper representative in this action, because that finding does not rely on the mere fact that there is pending litigation between the combatant Tarters. Rather, it is the character of this litigation and the nature of Josh's counterclaims that compels this conclusion.

Among Josh's allegations of his family's purportedly wrongful conduct is that David improperly assumed "executive authority over Tarter Industries for purposes of filing a direct action against Josh Tarter on behalf of Tarter Industries, solely for the benefit of himself and his immediate family members, and to the detriment of Tarter Industries." (DE 35 at 62.)

8

With this claim, in which Josh alleges that "the Counter-Defendants caused litigation to be filed on behalf of Tarter Industries for their own personal benefit" and that "[s]uch litigation lacks merit and is not in the best interest of Tarter Industries" (DE 35 at 62), he appears to be attempting to relitigate portions of his motion to dismiss Plaintiffs' complaint. *See C-Ville*, 2019 WL 1368621, at *7-*9. The Court has already determined that "David Tarter had the authority to call for the special meeting" during which a board resolution authorizing Tarter Industries to seek legal redress was adopted; that it "is unwilling to invalidate the vote taken at the… special meeting;" and that Plaintiffs have plausibly alleged ten separate counts of violations of federal or state law against Josh. *C-Ville*, 2019 WL 1368621, at *8, *23-*24. Thus, these allegations make little sense, beyond being Josh's breathless effort to tighten the litigation screws on his aunt and cousins. And indeed, the true purpose of these counterclaims is not even thinly veiled – *Davis* instructs the Court to consider the remedy sought, and Josh's prayer for relief explicitly requests that the Court dismiss with prejudice the claims that the businesses he seeks to represent have brought against him. (DE 35 at 69.) It is, astonishingly, the first form of relief he seeks. (DE 35 at 69.)

As in *Davis*, "[t]his derivative action appears to be just one more skirmish in a larger war" that the Tarter family members are waging against one another in this forum, "perverted into a weapon which, as its highest and best use, would be leverage in" the original action. 619 F.2d at 597. Several "courts have recognized that shareholder derivative actions can serve as a particularly effective weapon for purposes of obtaining a favorable settlement in other actions." *Aztec Oil & Gas, Inc. v. Fisher*, 152 F. Supp. 3d 832, 852 (S.D. Tex. 2016) (citation and internal quotation marks omitted). "[W]here there is a substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal, and not as a device for the protection of all shareholders, other courts have properly refused to permit the derivative action to proceed." *Owen v. Modern Diversified Indus., Inc.*, 643 F.2d

441, 443 (6th Cir. 1981) (citation omitted); *see also Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) ("the trial court should beware allowing a derivative suit to proceed where the representative could conceivably use the derivative action as leverage in other litigation" (citation and internal quotation marks omitted)). Although it would probably be irrelevant in most other contexts, the e-mail sent by Josh to Anna Lou, LuAnn, and Douglas nine days before he filed the counterclaims, in which he appears to request a quick resolution of this litigation (DE 45-2), further supports the contention that Josh is actively seeking leverage for a settlement and the conclusion that his personal interests far outweigh any genuine interest as a derivative plaintiff.

Beyond the pursuit of his own, personal interests, upon review of the record, Josh's personal animus towards Anna Lou, LuAnn, Douglas, and David appears to be the other significant driving force to these counterclaims. Parties' animosity towards each other is relevant to the question of inadequate representation, and the Court can consider the litigants' "history of antagonism" and whether the record suggests that the derivative suit is motivated by an interest in remedying personal grievances. *See Love*, 2007 WL 4928035, at *7. Vindictiveness, the seventh *Davis* factor, "may be difficult to measure," but finding "that there is not a good relationship between the parties" is significant to the determination. *See Hall v. Aliber*, 614 F. Supp. 473, 476 (E.D. Mich. 1985). In this case, "not a good relationship" is an understatement. A non-exhaustive sampling of excerpts from Josh's counterclaims that the Court found noteworthy could include: Josh alleging that LuAnn engaged in some sort of fraud apprenticeship under her father ("Lu Ann learned to misappropriate the Tarter Entities' assets from her father, David Tarter, who in fact set a precedent for widespread misuse of company funds") (DE 35 at 60); even though no specific claim is brought against David for such alleged conduct, Josh alleging that his uncle has "knowingly subjected the company to an extreme and ongoing risk of liability in light of his long history of workplace

10

sexual harassment," and that "[h]is abusive behavior toward female employees was in fact so problematic and disruptive that the Tarter Entities were forced to take out a large insurance policy for sexual misconduct liability protection" (DE 35 at 60); and Josh's implication that Douglas's role in Plaintiffs' purported "ongoing pattern and practice of employing illegal aliens" and "routinely assist[ing] illegal aliens applying for employment by instructing them on how to obtain a fraudulent Social Security card" is somehow rendered a more serious offense against the Tarter Entities because Douglas is a part-time police officer in Casey County, Kentucky (DE 35 at 64-65).

Finally, as to the eighth *Davis* factor, and as Plaintiffs highlight (DE 45 at 8), there is no evidence that the other Tarter shareholders – Keith and Nell[7] – support Josh's counterclaims.

## II. Josh's Motion for Leave to Join David Tarter as a Counter-Defendant

Because the Court will dismiss Josh's counterclaims, his motion for leave to join David Tarter as a counter-defendant will be denied as moot.

## Conclusion

Accordingly, the Court hereby ORDERS that:

1) Plaintiffs' motion to dismiss the counterclaims (DE 45) is GRANTED; and

2) Defendant's motion for joinder (DE 36) is DENIED as moot.

Dated February 20, 2020



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

---

[7] *See C-Ville*, 2019 WL 1368621, at *1-*3.