## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

| | |
|---|---|
| **C-VILLE FABRICATING, INC. d/b/a TARTER INDUSTRIES** *et al.*, | **CIVIL ACTION NO. 5:18-379-KKC** |
| **Plaintiffs,** | |
| **v.** | **ORDER AND OPINION** |
| **JOSHUA DONALD TARTER** *et al.*, | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on a motion filed by Plaintiffs C-Ville Fabricating, Inc. d/b/a Tarter Industries and by Anna Lou Tarter Smith, LuAnn Coffey, and Douglas Tarter, on behalf of Tarter Industries, Tarter Management Company, Inc., Tarter Gate Company, LLC and Tarter Tube, LLC (collectively, "Plaintiffs") to alter or amend the Court's March 25, 2022 Opinion and Order.  (DE 108.)  For the following reasons, that motion is granted in part and denied in part.  Upon reconsideration, Defendants Joshua Donald Tarter and Thomas Lewis Gregory's motion for summary judgment (DE 93) is granted in part and denied in part, and Plaintiffs' motion for partial summary judgment (DE 91) is denied as moot.

### I.    Facts

The facts of this case have been set forth ad nauseam in the Court's prior opinions in this matter.  As such, the Court will focus only on the facts most salient to the instant motions.

### A.     Background of Case

This case involves the Tarter family business, a manufacturer of farm and ranch equipment.  (Compl. ¶¶ 19, 22, 167.)  The business is comprised of four separate entities—C-Ville Fabricating, Inc. d/b/a Tarter Industries ("Tarter Industries"), Tarter Management Company, Inc. ("Tarter Management"), Tarter Gate Company, LLC ("Tarter Gate"), and Tarter Tube, LLC ("Tarter Tube") (collectively, "Tarter Companies").  (*Id.* ¶¶ 21, 26, 45, 66, 75.)  While legally distinct, the entities share common owners, resources, and employees.  (*Id.* ¶ 21.)

### 1.     Structure of the Businesses

As a family business, the ownership and management structure of the Tarter Companies are informal and unclear.  The "Third Generation" of the Tarter family consists of brothers David[1] and Donald, and their wives, Anna Lou and Joy, respectively.  (Compl. ¶ 23.)  The "Fourth Generation" consists of the Third Generation's children.  (*Id.* ¶¶ 23, 40.)  David and Anna Lou have two children, Douglas and LuAnn, and are now divorced.  (*Id.* ¶ 23.)  Donald and Joy's three children are Defendant Josh, Keith, and Nell.  (*Id.*)

The initial shares of Tarter Industries and Tarter Management, the only two entities relevant for purposes of this motion, were broken down as follows:

- **Tarter Industries:** Initially, David, Anna Lou, Donald, and Joy each held 25% interests in Tarter Industries.  (Compl. ¶ 23.)  They elected themselves as officers and directors.  (DE 1-2 at 3; DE 1-4 at 3.)  David was the President, Donald was the Vice President, Joy was the Treasurer, and Anna Lou was the Secretary.  (DE 1-4 at 3.)  Tarter Industries has not held an annual shareholders' or Board of Directors' meeting since 1997.  (Compl. ¶ 38; Anna Lou Dep. at 24:6-11.)  On

---

[1] For clarity, the Court will refer to the members of the Tarter family by their first names.

December 31, 2012, David, Donald, and Joy transferred their shares in Tarter Industries to their children. (DE 1-6.) Consequently, Anna Lou, Douglas, and LuAnn collectively held a 50% interest in Tarter Industries, while Josh, Keith, and Nell collectively held the other 50%. (Compl. ¶ 43.)

- **Tarter Management:** Anna Lou and Joy each had 50% interests in Tarter Management at the time of incorporation. (*See id.* ¶ 45.) They elected themselves as directors and appointed themselves as President and Secretary-Treasurer, respectively. (DE 1-9 at 2-3; DE 1-10 at 3.) Tarter Management has not held a shareholders' or Board meeting since 1997. (Compl. ¶¶ 55-56.) Due to a similar transfer of shares in 2012, Anna Lou, Douglas, and LuAnn collectively held a 50% interest in Tarter Management. (*Id.* ¶ 63; DE 1-14 at 2.) Josh, Keith, and Nell collectively held the other 50%. (*Id.*)

Despite these transfers of shares, neither Tarter Industries or Tarter Management formally elected a new Board of Directors or slate of officers.[2] Nor did David, Donald, or Joy formally resign as officers and directors of those entities.[3] And while the ultimate management structure for the Tarter Companies is unclear, Defendants Josh and Thomas Lew Gregory ("Gregory") had management positions with management responsibilities.

### 2. Defendants' Alleged Scheme

Around 2009, the Tarter Companies started sourcing components from Chinese suppliers. (Compl. ¶ 205.) The businesses used brokers to facilitate transactions with the suppliers for products. (*See* Gregory Dep. at 36:23-37:19; LuAnn Dep. at 14:13-14:17.) Tarter

---

[2] While Defendants have provided <u>no</u> affirmative evidence that any formal elections of officers or directors took place after the transfer of shares.

[3] Again, the Court has no record that any written resignations were submitted following the transfers of shares.

Industries hired Xiaofeng "Eleven" Chen to act as a broker for the company.  (*See* DE 93-16 at 2.)

In an email dated March 28, 2010, Chen first described the business plan for what would become Hong Kong QMC Industry Company, Ltd. ("QMC"), the third defendant in the action.[4]  (DE 1-23 at 2-3.)  He sent this email to Josh and Gregory, and this email was accessible on the Tarter Companies' server.  (*See* Anna Lou Dep. at 139:19-140:1, 140:5-14; Douglas Dep. at 18:3-11, 46:25-47:15; LuAnn Dep. at 51:9-52:6.)  In April 2010, Josh, Gregory, and Eleven officially formed QMC to function as a supplier of components to the Tarter Companies.  (Compl. ¶ 216; Gregory Answer ¶ 216; Josh Answer ¶ 216; DE 94-1 at 5.)  Josh and Gregory each owned 4,500 shares in QMC.  (DE 94-1 at 5.)  In May 2010, Tarter Industries sent its first wire to QMC, and QMC became one of the Tarter Companies' largest suppliers.  (Compl. ¶¶ 241, 278; DE 93-17 at 3.)  The resulting supply chain allegedly lead to increased revenue for Tarter Industries and enabled it to compete in the three-point equipment industry.  (Cox Dep. at 130:20-130:23; Josh Dep. at 88:6-88:13.)  Plaintiffs allege that Josh and Gregory failed to disclose their interests in QMC, artificially inflated the prices of QMC products, and used their positions to drive business from the Tarter Companies to QMC.  (Compl. ¶¶ 5, 229, 264-65.)  As a result, Plaintiffs estimate that Defendants personally profited $11 million.  (DE 92-1 at 2-16; Josh Dep. at 114:22-115:1-6.)

While Donald did not focus on the aspect of the business that involved three-point equipment, Defendants identify him as holding the highest leadership position across the Tarter Companies at the time.  (*See* DE 93-7 at 2; Anna Lou Dep. at 43:20-44:1; Cox Dep. at 29:21-30:1; David Dep. at 12:10-12:14; Osborne Dep. at 9:7-9:22.)  According to Defendants,

---

[4] The Clerk has entered default against QMC.  (DE 53.)  Therefore, references to "Defendants" throughout this opinion are to the remaining defendants, Josh and Gregory.

Donald knew of their interests in QMC by approximately 2010.  (DE 93 at 5; Donald Dep. at 16:18-18:14.)  However, Nell testified that Donald did not know about QMC.  (Nell Dep. at 16:16-17:12.)  While Joy later learned about his interest in QMC, Josh did not tell any other shareholders about his connection to QMC.  (Josh Dep. at 78:2-78:5; Joy Dep. at 10:25-11:21.)

In February 2012 and while still employed at Tarter Industries, Chen sent an email from his QMC email address to a purchasing agent for the Tarter Companies, asking her to remit payment to QMC.  (DE 93-21 at 3; Anna Lou Dep. at 52:15-52:18.)  Anna Lou was copied on the email.  (DE 93-21 at 3.)  Beginning in January 2013, Anna Lou became concerned about the amount of payments to QMC.  (Anna Lou Dep. at 57:4-58:8, 64:2-64:5, 66:23-67:16.)  At the same time, LuAnn researched QMC's corporate filings, which listed Josh and Gregory's ownership interests in the company.  (LuAnn Dep. at 36:16-36:20, 37:22-39:2.)  On January 14, 2013, LuAnn emailed the documents to Anna Lou and Keith.  (DE 94-1 at 2.)  Anna Lou and LuAnn initially interpreted the filings as stating that Josh and Gregory had ownership in QMC.  (*See* Anna Lou Dep. at 67:24-68:5; LuAnn Dep. at 40:21-41:1.)

When confronted at a meeting with Anna Lou, LuAnn, and Keith a few days later, Josh denied having any financial interest in QMC.  (Josh Dep. at 140:10-142:25.)  Instead, he described his financial interest as a "loan" to Chen.  (Anna Lou Dep. at 71:1-71:3, 88:15-89:2.)  Anna Lou subsequently approved every wire payment to QMC through 2017.  (*See, e.g.,* DE 94 at 2.)  Josh later admitted that he lied about ownership interest in QMC at that meeting.  (Josh Dep. at 142:21-142:23, 147:3-147:7.)

## B.   Procedural History

In 2017, Anna Lou, LuAnn, and Douglas filed their initial lawsuit against Josh, Gregory, and QMC.  *Smith v. Tarter*, 305 F. Supp. 3d 733, 738 (E.D. Ky. 2018).  That court dismissed the lawsuit, finding that the plaintiffs lacked standing in their individual capacities and derivatively on behalf of the Tarter Companies.  *Id.* at 740, 744.

5

Following the dismissal of the initial lawsuit, David, in his alleged position as President of the Tarter Companies, requested that Anna Lou, in her capacity as Secretary of Tarter Industries, issue notices of a special meeting to vote on whether to pursue litigation against Defendants. (Compl. ¶¶ 108-09.) In early February 2018, Anna Lou sent notices of the special meeting to each possible combination of directors and member/managers of the Tarter Companies. (DE 30-1 at 4, 7, 16, 19.) Plaintiffs also sent demand letters to the same recipients. (DE 30-1 at 1-3, 5-6, 8-9, 14-15, 17-18.) The demands requested a vote on whether to pursue litigation against Defendants. (*Id.*) David called the special meeting on February 22, 2018, with himself, Anna Lou, and Joy present as purported directors. (DE 1-21 at 2.) Anna Lou then moved to vote on whether to file a lawsuit against Defendants, and David seconded the motion. (*Id.*) David and Anna Lou voted to initiate the lawsuit, while Joy abstained from voting. (*Id.* at 3.) Anna Lou, LuAnn, and Douglas then filed the instant action, bringing a variety of claims in their individual and derivative capacities. (*See* DE 1.) Tarter Industries also joined as a plaintiff, bringing direct claims against Defendants in its own name.

After granting in part and denying in part Defendants' motion to dismiss, only the following claims remained for the individual plaintiffs in their derivative capacities and for Tarter Industries to pursue directly: (1) RICO (all Defendants); (2) RICO conspiracy (Josh and Gregory); (3) misappropriation under the Defend Trade Secrets Act ("DTSA") (all Defendants); (4) violation of Kentucky's Uniform Trade Secrets Act ("KUTSA") (all Defendants); (5) conspiracy to misappropriate trade secrets under the KUTSA (all Defendants); (6) breach of fiduciary duty (Josh and Gregory); (7) aiding/abetting Josh's breach of fiduciary duty (Gregory and QMC); (8) fraud by misrepresentation and omission (all Defendants); (9) usurpation of corporate opportunity (Josh and Gregory); and (10) unjust

6

enrichment (all Defendants).   (DE 31.)   Parties then filed cross-motions for summary judgment.  (DE 91; DE 93.)

### C.   The Court's March 25, 2022 Opinion and Order

In its March 25, 2022 Opinion and Order (the "March 25th Opinion"), the Court granted in part and denied in part Defendants' motion for summary judgment and denied Plaintiffs' motion for summary judgment.  (*See* DE 106.)  In doing so, the Court found that Tarter Industries' Board of Directors did not properly authorize the filing of the lawsuit as required by Kentucky law.  (*Id.* at 26.)  First, the Court found that David implicitly resigned as President and Director of Tarter Industries when he transferred his shares based on his subsequent conduct.   (*Id.* at 23-24.)   Since David was no longer the President of Tarter Industries, the Court concluded that he had no authority to direct Anna Lou to issue the notices of the special meeting or vote on the resolution to file the lawsuit at the meeting.  (*Id.* at 25.)  Accordingly, the special meeting was void, and Tarter Industries was not a proper party to the lawsuit.  (*Id.*)

As for the derivative claims, the Court held that Anna Lou, LuAnn, and Douglas made a proper demand on Tarter Industries, Tarter Management, Tarter Gate, and Tarter Tube. (*Id.* at 33-35.)  However, despite these proper demands, the Court found that each company's Board of Directors or Member/Managers rejected the demands, and those rejections were protected by the business judgment rule.  (*Id.* at 35, 43.)  In making this finding, the Court reasoned that Keith and Nell were not self-interested and acted in good faith.  (*Id.* at 37-39.) Moreover, the investigation into the claims was reasonable, and the rejections were made based on a rational business purpose.  (*Id.* at 39-43.)  Thus, deference to the Board's decisions was warranted, and the Court dismissed Plaintiffs' derivative claims.  (*Id.* at 43.)

This ruling is the subject of Plaintiffs' motion to reconsider.

## II.      Motion to Reconsider

### A.      Standard

Pursuant to Federal Rule of Civil Procedure 59(e), a party must file a motion to reconsider judgment "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  The standard for a motion to reconsider under Rule 59(e) is "necessarily high."  *Hewitt v. W. & S. Fin. Grp. Flexibly Benefits Plan*, CIVIL ACTION NO. 16-120-HRW, 2017 WL 2927472, at *1 (E.D. Ky. July 7, 2017).  The moving party may not use a Rule 59(e) motion as a tool to "re-litigate issues the Court previously considered." *Id.* at *1.  A court may only grant a Rule 59(e) motion if the moving party sets forth (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling law; or (4) a manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

### B.      Analysis

Plaintiffs file their motion based on either a clear error of law or a manifest injustice. (DE 108 at 7.)  Plaintiffs bring this motion on several different grounds: (1) the Court's ruling is inconsistent with its ruling on the motion to dismiss, which they contend held that the Board consisted of the Third Generation and that the business judgment rule did not apply; (2) the Court misconstrued the Board of Directors for Tarter Industries and Tarter Management as consisting of the Fourth Generation; (3) if the transfer of David's ownership in those two entities divested him of his seat on their respective Boards, the same must be true for Donald and Joy, making Anna Lou the only member of those Boards; (4) Keith and Nell are not members of either Board, so the Court incorrectly dismissed the derivative claims pursuant to the exercise of their business judgment; (5) even if Keith and Nell were directors, the business judgment rule does not apply; and (6) no rational business reason exists to abandon the default judgment against QMC.  (DE 108 at 1-2, 10.)

8

The Court will address each of these arguments in turn.

### 1.      Prior Motion to Dismiss Ruling

According to Plaintiffs, this Court's opinion on the motion to dismiss held that (1) the Board of Directors for Tarter Industries consisted of the Third Generation and (2) the business judgment rule did not apply to instant scenario.  (DE 108 at 2.)  Therefore, Plaintiffs maintain that those holdings establish the "law of the case."  (*Id.*)

Plaintiffs' characterizations of the Court's conclusions are misleading—conclusions on a motion to dismiss merely relate to the sufficiency of the complaint.  *See United States v. Clinkscale*, No. 4:12CV0080, 2013 WL 139806, at *1 (N.D. Ohio Jan. 10, 2013) ("A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is designed to test the sufficiency of the complaint . . .").  "The legal standard applicable to a motion to dismiss and the legal standard applicable to a motion for summary judgment are decidedly different."  *Id*.  In regards to the composition of the Board for Tarter Industries, the Court actually found that "Plaintiffs have *sufficiently alleged* that David Tarter had the authority to call for the special meeting and that, at the time of the meeting, the Board of Tarter Industries consisted of David, Donald, Joy, and Anna Lou." (DE 31 at 15 (emphasis added).)  Therefore, the Court did not definitively find that the Board consisted of the Third Generation, only that, under the motion to dismiss standard, Plaintiffs sufficiently alleged that the Board was composed in that way.  Similarly, the Court stated that "the refusals to request or issue calls for special meetings do not fall within the protections of the business judgment rule" because "[t]here is *nothing in the pleadings* that suggest that the Boards of Tarter Management and the member/managers of the Tarter LLCs arrived at this conclusion following independent reviews of the demands," and "it *appears* that there was no investigation whatsoever."  (DE 31 at 20-21 (emphasis added).)  Again, these determinations were based on the face of the pleadings, which is what matters

whenever a court rules on a motion to dismiss.  *See Hammons v. Barkdull*, 460 F. Supp. 3d 687, 691 (E.D. Ky. 2020) ("To avoid dismissal, the plaintiff must *plead* 'enough facts to state a claim to relief that is *plausible on its face.*'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570) (emphasis added).  Due to the differences in the applicable  standards, the Court's initial determinations on the motion to dismiss are not factual findings binding on summary judgment.  *See Walters v. Gill Indus., Inc.*, 586 F. Supp. 3d 633, 646 (E.D. Ky. 2022).  The Court will not grant Plaintiffs' motion on this basis.

### 2.     Composition of Tarter Industries' Board of Directors

Plaintiffs raise two distinct arguments regarding the composition of the Boards for Tarter Industries and Tarter Management.   First, Plaintiffs argue that the Court misconstrued the Boards as consisting of the Fourth Generation instead of the Third Generation.  Instead, Plaintiff misconstrues the Court's findings—in no part of the opinion did the Court conclude that the Fourth Generation governed the Boards.  In holding that David was no longer an officer or director of Tarter Industries, the Court made no other definitive conclusions about the composition of the Boards.  Indeed, the Court even stated that"[a]ssuming, but not deciding, that Anna Lou and Joy were members of the [Boards] as Plaintiffs claim, David was not." (DE 106 at 26.)  Therefore, the Court cannot grant Plaintiffs' motion to reconsider on this ground because there is nothing to reconsider.

Next, Plaintiffs argue that if David was divested of his position when he transferred his shares, then Donald and Joy were similarly divested of their positions.  (DE 108 at 1-2.)  No directors were formally elected to replace them.  Plaintiffs maintain that, based on this theory, Anna Lou would be the only director of Tarter Industries and Tarter Management.  (*Id*. at 2.)

An officer or director may resign through a "sufficiently clear manifestation of his or her intent to resign," and "[a]lthough the magic words 'I resign' may not be necessary, there

must nonetheless be some objective manifestation of words or actions to that effect." *Oracle Partners, L.P. v. Biolase, Inc.*, C.A. No. 9438-VCN, 2014 WL 2120348, at \*16 (Del. Ch. May 21, 2014), *aff'd*, 97 A.3d 1029 (Del. 2014).  When assessing an individual's intent to resign, a Court may consider "subsequent statements and conduct." *Id.*

Following the Court's decision on the motion to dismiss, Tarter Industries' direct claims and, alternatively, Plaintiffs' derivative claims on behalf of Tarter Industries, remained.  (*See* DE 31.)  At the time that Plaintiffs filed their lawsuit, David, Donald, and Joy had transferred their shares in Tarter Industries to their children. (DE 1-6.)  Anna Lou maintained her interest.  (Compl. ¶ 43.)  As a result, Anna Lou, Douglas, and LuAnn collectively held a 50% interest in Tarter Industries, while Keith, Joshua, and Nell collectively held the other 50%.  (*Id.*)  Because no shareholder or Board meeting was held following that transfer, the most recently appointed officers were David, Anna Lou, Donald, and Joy, and the most recently elected Board consisted of the same individuals.  (*See* DE 1-4 at 2-3.)

As set forth in the March 25th Opinion, David implicitly resigned as an officer and director based on his statements and conduct after he transferred his ownership in Tarter Industries to LuAnn and Douglas.  (DE 106 at 23-24.)  The undisputed evidence shows that after the transfer, David testified that he did not remain a director.  (David Dep. at 58:15-58:19.)  Following the transfer, corporate documents and annual reports did not list David as an officer or a director.  (DE 93-4 at 6-10; DE 93-28 at 8; David Dep. at 64:5-64:10, 64:18-65:2, 70:24-71:22.)  Nor did David question subsequent public documents naming Josh as the President of Tarter Industries.  (David Dep. at 70:24-71:22.)

Under Tarter Industries' bylaws, "[t]he secretary shall call a special meeting of the Board when directed by the president, or upon written request of a majority of the Board of Directors."  (DE 1-1 at 7.)  David directed Anna Lou to issue notice of the special meeting.

11

(Compl. ¶ 109.)  Because David was neither an officer or director of Tarter Industries, the Court found that he lacked the power to call a special meeting or vote on any resolution.  (DE 106 at 24.)  Therefore, as the Court found, the vote to authorize the litigation was void because the special meeting did not comply with the bylaws.  (*Id*. at 24-25.)  In turn, this meant that the Board did not properly authorize Tarter Industries to maintain its direct claims against Defendants.  (*Id*. at 26.)

The Court's analysis stopped there.  In determining if the litigation was properly authorized, it did not reach question of which other directors comprised Tarter Industries' Board.  Plaintiffs' objection is well-taken.  "A 'clear error of law' occurs where the original ruling overlooked . . . some argument."  *Jackson v. Ford Motor Co.*, No. 15-1180, 2016 WL 4533028, at *1 (W.D. Tenn. Mar. 21, 2016) (citations and quotation marks omitted).  As Plaintiffs have pointed out, the Court committed a clear error of law when it overlooked the domino effect its finding had on the status of other Board members.

By logical extension and applying the same rationale, subsequent statements made by Donald and Joy similarly establish that they implicitly resigned as officers and directors of Tarter Industries when they transferred their shares.  Donald stated that after he transferred his shares, he believed that he was no longer a director of Tarter Industries. (Donald Tarter Dep. at 95:20-95:24.)  Joy also testified that she was retired.  (Joy Dep. at 6:6-6:7.)  Like the evidence that the Court relied upon in concluding that David resigned, these statements are sufficiently clear enough to manifest their intent to resign.  Oddly enough, this leaves Anna Lou as the only remaining officer and director for Tarter Industries.

Whether the Fourth Generation assumed the responsibilities of officers and directors after they obtained their shares is irrelevant—Tarter Industries' bylaws require the Board

to fill a vacant seat among the officers[5] and directors[6] through an election.  (DE 1-1 at 7, 9.) No annual shareholder or Board meeting was held to formally fill the vacancies that David, Donald, and Joy left behind.  Anna Lou is therefore the sole officer and director for Tarter Industries.

Having determined that Tarter Industries' Board consists of only Anna Lou, the Court must now evaluate the impact that the Board composition has on Tarter Industries' standing to file this lawsuit.  As set forth in the Complaint, Tarter Industries could seek relief either directly in its own name or through derivative claims asserted by Anna Lou, LuAnn, and Douglas on its behalf.  Upon the shareholder demand, Tarter Industries' Board had two options: (1) take action by filing a lawsuit or (2) do nothing.  With Anna Lou acting as the only Board member for Tarter Industries, the ramifications of the March 25th Opinion creates a logical fallacy.  The Court found that the Board did not authorize the filing of the litigation due to David's resignation, so Tarter Industries could not bring direct claims.  (*See* DE 106 at 25-26.)  It also found that Anna Lou, LuAnn, and Douglas lacked derivative standing on behalf of Tarter Industries because the Board's failure to act on their demands passed muster under the business judgment rule.  (*Id.* at 35, 43.)  But the Board did act.  Anna Lou, who the Court has determined is the sole member of Tarter Industries' Board, filed a lawsuit with Tarter Industries as a plaintiff.  (DE 1.)  Because the Tarter Industries' Board (i.e., Anna

---

[5] "Whenever any vacancy shall occur among the officers from resignation, removal, death or disability, the Board of Directors may elect a successor to hold office until the annual meeting of the Board of Directors or until his successors shall be elected and qualified; or the duties of any officer may be delegated to one of the other officers by resolution of the Board of Directors."  (DE 1-1 at 9.)

[6] "Whenever a vacancy shall occur in the Board of Directors from any cause, it shall be filled by election of the Board, and such Director shall hold office until the next annual meeting of the stockholders or until his successor shall be elected and qualified."  (DE 1-1 at 7-)

Lou) took action, the Court can no longer say that the Board's *inaction* is protected by the business judgment rule.  For Tarter Industries, derivative standing becomes a nullity.

So, what does that mean for Tarter Industries' direct claims?  Before the Tarter Industries' Board can act, the Secretary must call a special meeting upon the direction of the president or upon written request by a majority of the Board.  (*See* DE 1-1 at 7.)  Anna Lou, who still held her post as Tarter Industries' Secretary, undoubtedly called a special meeting by issuing notices.  (DE 30-1 at 1-3, 5-6, 8-9, 14-15, 17-18.)  Consistent with the March 25th Opinion, Tarter Industries had no president to so direct Anna Lou.  However, Anna Lou, who represented the majority of the Board, sent a written request asking to conduct a special meeting.  (DE 30-1 at 1-3, 5-6, 8-9, 14-15, 17-18.)  For the Board to authorize Tarter Industries to file litigation against Defendants, "[a] majority of the exiting Directors shall constitute a quorum for the transaction of business at any meeting of the Board[.]"  (DE 1-1 at 7.)  Anna Lou was the only existing director at the time of the special meeting, which she attended.  (DE 1-21 at 2.)  Therefore, a quorum existed at the special meeting.  Because Anna Lou voted to pursue the litigation against Defendants at that meeting in that capacity, the Board properly authorized the litigation.

Therefore, to the extent that Plaintiffs ask the Court reconsider whether Tarter Industries may pursue its direct claims in light of the Court's ruling that David implicitly resigned as an officer and director, the Court grants the motion.  Accordingly, the Court revives Tarter Industries' direct claims.

The Court recognizes that a Rule 59(e) motion is "extraordinary in nature" and should be only "sparingly granted."  *L.C. v. United States*, Case No. 5:21-cv-00124-GFVT, 2022 WL 2814889, at *2 (E.D. Ky. July 18, 2022) (citation and quotation marks omitted).  However, "[t]he purpose of Rule 59(e) is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings."  *Henly*

*Mining, Inc. v. Parton*, Civil No. 6:17-CV-00092-GFVT, 2019 WL 1048839, at *1 (E.D. Ky. Mar. 5, 2019) (citation and quotation marks omitted).  Plaintiffs have given the Court an opportunity to reconsider its previous decision, and it will.  In its March 25th Opinion, the Court stopped short of fully examining the implications of its determination that David resigned as an officer and director of Tarter Industries.  This case presents that rare circumstance where the Court must reconsider its prior decision to remedy its errors and prevent parties from appealing issues that were of the Court's own making.  The Court notes that this is the <u>first time</u> that Plaintiffs raised the theory that Anna Lou was the only officer and director of Tarter Industries.  As ever, the parties' views on the governing officers and directors of the Tarter Companies are a tangled web that parties continue to unweave in dissonant directions.  But due to the Court's own oversight in creating a paradox regarding Tarter Industries' route to standing, the Court will allow reconsideration as to the composition of Tarter Industries' Board and the effect of that composition.  As a consequence of the Court's prior findings and to clarify a muddied record, the Court grants Plaintiffs' motion as to this issue only.  Tarter Industries may proceed to trial on its direct claims, subject to the Court's analysis on the merits of the parties' cross-motions for summary judgment.

### 3.    Business Judgment Rule

Plaintiffs also move the Court to reconsider the application of the business judgment rule to the decision of the Boards to refrain from filing a lawsuit against Defendants after shareholders issued their demands.  (DE 108 at 7-8.)  Plaintiffs argue that the Court erroneously focused on the business judgment of Keith and Nell, who were allegedly not

15

directors of Tarter Management.[7]  (*Id.*)  Even if Keith and Nell were directors, Plaintiffs maintain that the business judgment rule does not apply.  (*Id.* at 9-10.)

As for Plaintiff's  contention that Keith and Nell's business judgment is irrelevant, the business judgment of Keith and Nell was the focus of the parties' briefing.  (*See* DE 93 at 14-15, 19; DE 96 at 7-8, 11-12; DE 100 at 3-6.)  "[P]arties cannot use a motion [to reconsider] to raise new legal arguments that could have been raised before a judgment was issued."  *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).  If the business judgment of any other potential director of Tarter Management was relevant to that determination, then Plaintiffs could have raised it on summary judgment.  They did not, so this argument comes too late.  In any event, the business judgment rule considers the decision of a board of directors *as a whole*.  *See Levine v. Liveris*, 216 F. Supp. 3d 794, 807-08 (E.D. Mich. 2016) ("In other words, the business judgment rule applies to review of *the Board's* demand refusal.") (emphasis added); *Allied Ready Mix Co. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 8-9 (Ky. Ct. App. 1998) ("[C]ourts apply the business judgment rule in reviewing *the board's* refusal to act pursuant to a shareholder's demand to file a lawsuit.") (emphasis added).  No matter who was on the Board for Tarter Management, that Board's failure to act was subject to the business judgment rule.  The Court's analysis reflected the parties' own choice to focus on the business judgment of two specific potential directors, and parties did not submit evidence of any other director's business judgment.

---

[7] This analysis focuses solely on Tarter Management because, as previously found, Tarter Industries may pursue its direct claims.  Tarter Management does not have similar standing because it never filed a lawsuit in its own name; therefore, Tarter Management could only have derivative standing.  Moreover, Plaintiffs do not appear to challenge the Court's conclusion regarding the derivative standing of the LLCs, Tarter Gate and Tarter Tube.  To the extent Plaintiffs do so challenge the standing of the LLCs, the same analysis that applies to Tarter Managements applies to them.

The business judgment rule creates a presumption that a board of directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company" when making business decisions. *Allied Ready Mix Co.*, 994 S.W.2d at 8 (citation and quotation marks omitted). According to Defendants and as found in the March 25th Opinion, Keith and Nell made the business decision to refrain from filing suit on behalf of Tarter Management due to concerns about litigation costs, business reputation, and employee morale. (DE 106 at 42-43; Keith Dep. at 208:10-208:19, 213:8-214:5, 217:5-217:24; Nell Dep. at 116:12-116:15, 117:11-117:22, 119:3-119:25, 121:14-121:17.)

Plaintiffs argue that "the alleged concerns of Keith and Nell were resolved by the time the summary judgment was issued," and therefore, the Court should not defer to their business judgment. (DE 108 at 9-10.) As evidence that litigation costs were no longer a concern, Plaintiffs cite to the fact that Anna Lou paid the costs of litigation herself. (*Id.* at 9.) However, Plaintiffs already raised this argument during their initial briefing, and the Court has already considered it. (*See* DE 96 at 12; DE 106 at 42-43.) Because "[a] party may not utilize a Rule 59(e) motion to re-litigate issues the Court previously considered," the Court will not reconsider that argument here. *Hewitt*, 2017 WL 2927472, at *1. Regarding the other concerns, Plaintiffs state that at the time of the lawsuit's filing, "it was known that [Tarter Management's] business was not damaged by the lawsuit, that the company's reputation was not damaged by the lawsuit, and that employee morale was not injured by Plaintiffs' attempts to keep jobs from being sent to China." (DE 108 at 9-10.) But they point to no evidence to support that statement. "The party challenging the board's decision bears the burden to establish facts rebutting this presumption." *Allied Ready Mix Co.*, 994 S.W.2d 4 at 8-9. Plaintiffs have not met their burden to prove the facts necessary to overcome the presumption of the business judgment rule.

Therefore, the Court denies the motion to reconsider its application of the business judgment rule.

### 4.    Default Judgment against QMC

Plaintiffs also contend that the Court had no reason to abandon the default judgment against QMC.  This arguments fails for two distinct reasons.  For one, before obtaining a default judgment, two things must happen: (1) the party seeking a default judgment must obtain an entry of default by the clerk, and (2) the party must then move for a default judgment. Fed. R. Civ. P. 55(a)-(b).  Here, Plaintiffs have only completed the first step, so the Court cannot enter a default judgment against QMC yet.  Moreover, "[w]hen a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants." *Kimberly v. Coastline Coal Corp.*, 857 F.2d 1474 (Table), 1988 WL 93305, at *3 (6th Cir. 1988).  Because Tarter Industries' claims against QMC's co-defendants are proceeding to trial, the Court will refrain from entering a default judgment at this time.  Therefore, the Court denies Plaintiffs' motion to the extent it requests that the Court grant a default judgment against QMC.

## III.   Cross-Motions for Summary Judgment

Since the Court has granted Plaintiffs' motion to reconsider under Rule 59(e) to the extent that Tarter Industries is authorized to maintain its direct claims against Defendants, the Court will re-examine parties' cross-motions for summary judgment as to these claims.

### A.    Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation marks omitted). All evidence, facts, and inferences must be viewed in favor of the non-moving party. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "In order to defeat a summary judgment motion, . . . [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When parties file cross-motions for summary judgment, "the fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Regions Bank v. Lenox*, No. CV 5: 18-014-DCR, 2019 WL 320566, at *2 (E.D. Ky. Jan. 24, 2019) (citations omitted).

   **B.    Defendants' Motion for Summary Judgment**

   Defendants bring various defenses against Tarter Industries' claims, including the statute of limitations, ratification, and acquiescence. As further detailed below, genuine disputes of material fact exist as to these defenses, making summary judgment inappropriate at this juncture. Defendants also argue that Tarter Industries' claims lack substantive merit. While the majority of these arguments fail for the same reasons as its defenses, Tarter Industries has failed to provide "more than a scintilla of evidence" in support of its trade secret claims, and accordingly, the Court must dismiss them. *Van Gorder*, 509 F.3d at 268. Therefore, the Court grants in part and denies in part Defendants' motion for summary judgment.

       **1.    Defenses**

           **a.    Statute of Limitations**

   As set forth *infra*, genuine disputes of material fact remain as to whether the statute

of limitations bars certain claims brought by Tarter Industries against Defendants. Therefore, while the Court denies Defendants' motion for summary judgment as to their statute of limitations defense, this conclusion does not prevent Defendants from pursuing this defense at trial.

### i.   Breach of fiduciary duty and aiding and abetting breach of fiduciary duty

"A cause of action for a breach of fiduciary duty accrues when the breach occurs." *Bell v. Jefferson*, Civil Action No. 5:18-CV-32-CHB, 2021 WL 1233457, at *13 (E.D. Ky. Mar. 31, 2021). The discovery rule does not apply to breach of fiduciary duty claims. *Middleton v. Sampey*, 522 S.W.3d 875, 879 (Ky. Ct. App. 2017). Therefore, a plaintiff must file an action for breach of fiduciary duty within five years of that breach. *Id.* at 879. These same rules apply to claims for aiding and abetting a breach of fiduciary duty. *Anderson v. Pine S. Cap., LLC.*, 177 F. Supp. 2d 591, 604 (W.D. Ky. 2001).

Defendants argue that under Tarter Industries' theory of the case, the breach of fiduciary claim accrued when Defendants acquired financial interest in QMC in 2010. (DE 93 at 21.) As alleged, Defendants' scheme to form QMC, overcharge the Tarter Companies for QMC products, and pocket the excess revenue began during the first half of 2010. (Compl. ¶¶ 209, 216, 237-38.) According to Tarter Industries' theory, Defendants' breach arose from their failure to disclose their personal interests in transactions between QMC and the Tarter Companies. (*Id.* ¶ 238.) Based on this theory, the breach occurred, at latest, in May 2010, when Tarter Industries sent its first wire to QMC. (*Id.* ¶ 241.) Because Tarter Industries did not file this action until June 5, 2018—beyond the five-year limitations period—its breach of fiduciary duty claims are time-barred, except if a tolling doctrine applies.

Because the discovery rule does not apply to breach of fiduciary duty claims, *Middleton*, 522 S.W.3d at 879, Tarter Industries instead relies on equitable tolling to argue

that the statute of limitations did not begin to run on its claims until 2016. (DE 96 at 14-16.) Under Kentucky's doctrine of equitable tolling, the state tolls the statute of limitations "whenever the defendant's wrongful conduct prevents a plaintiff from discovering [its] claims." *Osborn v. Griffin*, 865 F.3d 417, 437 (6th Cir. 2017). Typically, equitable tolling only applies when "a defendant commits an affirmative act that conceals his wrongdoing." *Id.* Such affirmative acts include conduct "which in point of fact misleads or deceives the plaintiff and obstructs or prevents [it] from instituting [its] suit while [it] may do so." *Helm v. Ratterman*, CIVIL ACTION NO. 3:16-CV-00771-TBR, 2017 WL 2800865, at *6 (W.D. Ky. June 28, 2017), *aff'd,* 778 F. App'x 359 (6th Cir. 2019). In cases of affirmative acts of concealment, the statute of limitations begins to run either when (1) "the defendant's concealment is revealed"; or (2) "the plaintiff should have discovered [the] cause of action by reasonable diligence." *Id.* (citation and quotation marks omitted).

However, "'[w]hen a confidential relationship exists between the parties[,] the statute does not begin to run until *actual discovery* of the fraud [or] mistake.'" *Osborn*, 865 F.3d at 438 (quoting *Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971) (emphasis added). In raising their equitable tolling argument, Tarter Industries cites to *Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017) and *Security Trust Company v. Wilson*, 210 S.W.2d 339 (1948). In both cases, the courts found that a familial relationship constituted a confidential relationship for purposes of equitable tolling. *See Osborn*, 865 F.3d 439-40 (confidential relationship existed between siblings where the brothers managed the family business and assets); *Sec. Tr. Co.*, 210 S.W.2d at 339-40 (confidential relationship existed between uncle and niece where the uncle managed her assets). Those findings reflect the rationale of the actual notice requirement for confidential relationships—in those relationships, parties "do not have the reason or occasion to check up on each other that would exist if they were dealing at arm's

length" due to a "certain degree of trust and confidence" between them. *Osborn*, 865 F.3d at 438, 445. (citations and quotation marks omitted).

Here, the Court finds that equitable tolling may extend the limitations period and transform Tarter Industries' time-barred breach of fiduciary duty claims into timely ones. Josh committed an affirmative act to conceal his personal interest in QMC when he undisputedly lied to Anna Lou and LuAnn about his ownership interest in the entity, instead describing his financial interest as a "loan" to Chen. (Anna Lou Dep. at 71:1-71:3, 88:15-89:2.) Josh's lie is the hallmark of misleading and deceitful conduct that prevented Tarter Industries from pursuing legal action. Unless a confidential relationship exists, the statute of limitations for Tarter Industries' breach of fiduciary duty claims did not begin running until it discovered, or should have discovered by reasonable diligence, Josh's lie.

Defendants contend that a confidential relationship is not present for purposes of equitable tolling since the Court has dismissed the claims that Anna Lou, LuAnn, and Douglas brought in their individual capacities. (*See* DE 100 at 9-10.) Moreover, Defendants state that Tarter Industries had actual knowledge of its breach of fiduciary claim in January 2013 when Anna Lou first learned of Defendants' interests in QMC. (*Id.* at 10.) This is because Anna Lou's knowledge was "imputed" to Tarter Industries due to her role as its officer and director. (*Id.*)

The Court recognizes that as a "general rule . . . an agent's knowledge is imputed to the corporation." *SAAP Energy, Inc. v. I.A.T., Inc.*, CIVIL ACTION NO. 1:12-CV-00098-HBB, 2022 WL 885040, at *4 (W.D. Ky. Mar. 24, 2022). However, Defendants cannot take advantage of that rule by arguing that the knowledge Anna Lou allegedly gained by receiving QMC's corporate filings was imputed onto Tarter Industries while simultaneously ignoring how Josh's admitted dishonesty may have impacted that knowledge. (DE 94-1 at 2; Anna Lou Dep. at 67:24-68:5; Josh Dep. at 142:21-23, 147:3-7.) Because parties acknowledge that

Anna Lou and Josh have a familial relationship due to their status as aunt and nephew, they have a confidential relationship based on existing case law precedent.  (*See e.g.,* DE 93 at 2; DE 96 at 15-16; DE 100 at 9-10.)  Since " [i]t is well settled that a corporation . . . can only act through its agents,"[8] and Anna Lou's knowledge (or lack thereof) is imputed onto Tarter Industries, that confidential relationship carries over to the relationship between Tarter Industries and Josh for purposes of equitable tolling.  Therefore, the statute of limitations did not begin to run until Tarter Industries *actually discovered* that Josh had an interest in QMC but failed to disclose it.

Exactly *when* Tarter Industries learned about Josh's conflict is the subject of much dispute.  According to Defendants, Anna Lou first learned about his interest in January 2013, when she saw corporate filings indicating that Josh and Gregory each owned 4,500 shares of QMC, which she interpreted as stating that they had ownership interests in the company. (DE 94-1 at 2; LuAnn Dep. 36:16-20,37:22-39:2.)  However, Tarter Industries contends that it did not learn of the conflict until some point in 2016 because Josh initially denied having any financial interest in QMC when confronted in January 2013.  (DE 96 at 16-17; Anna Lou Dep. at 71:1-71:3, 88:15-89:2; Josh Dep. at 140:10-142:25, 147:3-147:7.)   Because Josh undisputedly lied about his interest in QMC in January 2013 after Anna Lou and LuAnn reviewed the corporate filings, the Court concludes that a reasonable jury could find that Anna Lou learned of his interest at some point later than January 2013.  However, while Tarter Industries asserts that it learned of this interest in 2016, it provides no evidence to support this assertion.  Without more evidence to confirm *when* Tarter Industries learned of

---

[8] *BancInsure, Inc. v. U.K. Bancorporation Inc./United Kentucky Bank of Pendleton Cnty., Inc.*, 830 F. Supp. 2d 294, 301 (E.D. Ky. 2011).

Josh's interest in QMC, the Court cannot fully analyze whether the statute of limitations would bar the breach of fiduciary duty claims.[9]

Therefore, because genuine disputes of material fact still remain as to when Tarter Industries actually learned of Josh's interest in QMC, the Court denies summary judgment as to Defendants' argument that the breach of fiduciary duty claims are untimely.

### ii.    Fraud

A plaintiff must also bring an action for fraud within five years of accrual. *Easterly v. Metro. Life Ins. Co.*, Nos. 2006-CA-001580-MR, 006-CA-001687-MR, 2009 WL 350595, at *3 (Ky. Ct. App. Feb. 13, 2009).  A fraud action accrues "on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 289 (Ky. Ct. App. 2019) (citation and quotation marks omitted).

Under Tarter Industries' theory of the case, the injury from Defendants' fraud was a result of QMC overcharging Tarter Industries and Defendants diverting that money to themselves while simultaneously working for Tarter Industries and concealing the scheme. (Compl. ¶¶ 209, 215, 252, 255.)  Consequently, Tarter Industries allegedly lost money due to the inflated costs, use of its resources, and the costs to repair defective products provided by QMC.  (*Id.* ¶¶ 229, 263, 267, 340.)  Like Tarter Industries' breach of fiduciary duty claims,

---

[9] Because "Kentucky law places persons and entities that aid or abet a tort in the same position as the primary tortfeasor," *Osborn*, 865 F.3d at 440, this analysis applies with equal force to the breach of fiduciary duty claim against Josh and the aiding/abetting claim against Gregory.

the injury from the fraud arose by May 2010 when Tarter Industries engaged in its first transaction with QMC and wired funds to it.  (*Id.* ¶ 241.)

Based on the record before it, the Court cannot conclude when the fraud claims accrued for purposes of calculating when the statute of limitations expired.  As discussed above, *when* Tarter Industries discovered its injury—i.e., the harm that Josh and Gregory caused by acquiring interests in QMC and engaging in transactions with Tarter Industries while concealing those interests— is disputed.  At this stage, the Court also cannot resolve when Tarter Industries *should* have discovered its injury.  According to Defendants (DE 93 at 21), Tarter Industries should have discovered its injury by January 2013, if not earlier.  In January 2013, Anna Lou and Lu Ann first accessed QMC corporate filings showing that Josh and Gregory each owned 4,500 shares of QMC.  (DE 94-1 at 2; LuAnn Dep. 36:16-36:20, 37:22-39:2.)  Anna Lou and LuAnn admitted that, at the time, they interpreted the filings as showing that Josh and Gregory had ownership in QMC.  (*See* Anna Lou Dep. at 67:24-68:5; LuAnn Dep. at 40:24-41:1.)  Previously, in an email to Josh and Gregory dated March 28, 2010, Chen described the business plan for QMC, and that email was accessible on the Tarter Companies' server.   (DE 1-23 at 2-3; *see* Anna Lou Dep. at 139:19-140:1, 140:5-140:14; Douglas Depo. at 18:3-11, 46:35-47:15; LuAnn Dep. at 51:9-52:6.)  In February 2012, Chen also sent an email from his QMC email address to the purchasing agent for the Tarter Companies and copied Anna Lou on the email.  (DE 93-21 at 3.)  At the time, Chen was also an employee of Tarter Industries.  (Anna Lou Dep. at 52:15-18.)

However, Josh undisputedly lied about his ownership interest in QMC in January 2013 after Anna Lou and LuAnn reviewed QMC's corporate filings and confronted him. (Anna Lou Dep. at 71:1-71:3, 88:15-89:2l Josh Dep. at 140:10-142:25, 147:3-147:7.)  Because Josh lied about his ownership interest in QMC, a reasonable jury could find that, even in the exercise of ordinary care and diligence, Tarter Industries should not have discovered its

25

injury until sometime after January 2013. Tarter Industries has provided sufficient evidence that its fraud claims *may* fall within the statute of limitations and defeat that defense. But because Tarter Industries has not provided sufficient evidence demonstrating exactly when it learned of Defendants' fraud and the injury resulting from it, the Court cannot foreclose the possibility that the statute of limitations may still bar the fraud claims. For these same reasons and for the reasons provided in the Court's previous discussion of equitable tolling, the Court also cannot determine if equitable tolling will extend the limitations period such that the fraud claims are timely.

Thus, the Court denies summary judgment as to Defendants' statute of limitations defense against Tarter Industries' fraud claims.

### iii.    Unjust enrichment

A five-year statute of limitations period likewise applies to unjust enrichment claims. *Underwood v. Metts*, NO. 2018-CA-000124-MR, 2019 WL 1313144, at *2 (Ky. Ct. App. Mar. 22, 2019). An unjust enrichment claim accrues on the date of injury, and the statute of limitations begins to run when the plaintiff learns of that injury. *See id.* at *2-*3.

Tarter Industries alleges that Defendants were unjustly enriched when they "wrongfully received and retained the benefit of monies and other assets that rightfully belong" to Tarter Industries. (Compl. ¶ 466.) As with Tarter Industries' other claims, the injury occurred upon the company's first wire transaction with QMC. (*Id.* ¶ 241.) Based on the evidence before the Court, genuine disputes of material fact exist as to when Tarter Industries learned of Defendants' alleged scheme and the injuries that resulted for the reasons discussed *supra*. For the same reasons, the impact of any equitable tolling on the limitations period for the unjust enrichment claims are unclear. Therefore, the Court denies Defendants' motion for summary judgment to the extent it argues that the statute of limitations bars Tarter Industries' unjust enrichment claim.

26

### iv.    Substantive RICO and RICO conspiracy

The statute of limitations for RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987)  "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005).  The Supreme Court has rejected a discovery rule where the limitations period is tolled until the plaintiff discovers that a "pattern of racketeering" exists. *Rotella v. Wood*, 528 U.S. 549, 560-61.  However, equitable tolling may still apply to RICO claims. *Id.*

In this case, Tarter Industries maintains that it was injured by a RICO violation when Defendants wrongfully diverted funds from transactions between QMC and Tarter Industries for excessively priced products while hiding their interests in QMC. (Compl. ¶¶ 349-50, 377.) Tarter Industries also alleges that it absorbed the costs of defective products that QMC supplied. (*Id.* ¶ 349.)  Like Tarter Industries' other claims, the injury therefore arose no later than May 2010 with Tarter Industries' first wire transfer to QMC. (*Id.* ¶ 241.)  However, for the reasons already given, genuine disputes of material remain as to when Tarter Industries knew or should have known of this injury, and therefore, whether its RICO claims are timely. Similarly, to what extent equitable tolling affects the limitations period for the RICO claims is irresolvable at this stage.

Accordingly, the Court denies Defendants' motion for summary judgment as to its argument that Tarter Industries' RICO claims are time-barred.

### v.    Usurpation of corporate opportunity

Defendants do not raise a statute of limitations defense as it relates to Tarter Industries' usurpation of corporate opportunity claim.  Therefore, the Court will not analyze this defense for that claim.

b.    **Ratification**

Ratification occurs when a principal assents to an agent's unauthorized acts.  *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 874 (Ky. 2016).  A principal assents to an agent's unauthorized acts if the principal has 1) "an after-the-fact awareness of the conduct;" and 2) the intention to ratify the conduct.  *Id.* at 875.  A principal may expressly or implicitly ratify the relevant acts, considering the facts and the circumstances.  *Id.* at 874-75.  To rely upon this defense, the principal must have had "actual knowledge" of the improper conduct.  *Hurd Fam. P'ship, L.P. v. Farmers Bank*, Civil Action No. 3:13-CV-485-DJH-CHL, 2016 WL 7365177, at *4 (W.D. Ky. Dec. 19, 2016) (citations and quotation marks omitted).

Defendants argue that Tarter Industries ratified "each purported conflict of interest transaction" after January 14, 2013, because, in her capacity as an officer and director of Tarter Industries, Anna Lou effectuated the wire transfers to QMC with knowledge of the conflicts of interest gained from viewing corporate filings.  (DE 93 at 7, 24.)  Countering this argument, Tarter Industries states that payment of invoices do not demonstrate intent to ratify the transactions, and nothing in the record shows that Anna Lou consented to Defendants' "hidden ownership interest" in QMC.  (DE 96 at 17-18.)

Anna Lou's purported knowledge is based on her examination of QMC's corporate filings in January 2013, which stated that Defendants each owned 4,500 shares.  (DE 94-1 at 2, 5; LuAnn Dep. 36:16-36:20, 37:22-39:2.)  At the time, Anna Lou understood the filings as showing Defendants' ownership interests in QMC.  (*See* Anna Lou Dep. at 68:2-68:5.)  Anna Lou subsequently approved every wire payment to QMC through 2017.  (*See, e.g.*, DE 94 at 2.)  However, Josh admittedly lied about his interest in QMC when confronted by Anna Lou only a few days after she viewed the filings.  (Josh Dep. at 142:21-142:23, 147:3-147:7.)  A

reasonable jury could find that, as a result of Josh's lie, Anna Lou did not have actual knowledge of his conflict of interest when she approved subsequent QMC transactions.

Accordingly, the Court denies Defendants' motion for summary judgment as to its ratification defense. Because a genuine dispute of material fact remains as to Anna Lou's actual knowledge when she approved these transaction, Defendants may still raise their ratification defense at trial.

### c.   Acquiescence

"Acquiescence consists of assent by words or conduct on which the other party relies." *Hazard Coal Corp. v. Kentucky W. Virginia Gas Co.*, 311 F.3d 733, 740 (6th Cir. 2002). To assert an acquiescence defense, the defendant must establish that

> a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts . . . acts in a manner inconsistent with [the transaction's] repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject matter[.]

*Id.* Accordingly, a party acquiesced to a transaction if the party "either 'knew or should have known' of the [tort] but merely sat by and allowed it to occur." *Lewis v. Ceralvo Holdings, LLC*, CIVIL ACTION NO. 4:11-CV-00055-JHM, 2016 WL 6436569, at *2 (W.D. Ky. Oct. 27, 2016) (citing *Hazard Coal Corp.*, 311 F.3d at 741).

The parties' positions on Defendants' acquiescence defense mirror their positions on the ratification defense—Defendants argue that Tarter Industries acquiesced to every QMC transaction initiated later than January 14, 2013, when Tarter Industries acquired actual knowledge of the basis for its claims after Anna Lou and LuAnn viewed QMC's corporate filings. (*See* DE 94-1 at 2.) Tarter Industries responds that "[n]othing in this case indicates" that it acquiesced to these transactions. (DE 96 at 18.) As with Defendants' ratification defense, Tarter Industries' actual knowledge of the alleged conflicts of interest underlying these transactions is disputed.

The extent to which Tarter Industries "should have known" of the conflicts of interest is likewise disputed. Prior to 2013, Anna Lou was copied on an email from Chen's QMC email address while he was employed at Tarter Industries, and other emails describing the business plan for QMC were also accessible on the Tarter Companies' server. (DE 1-23 at 2-3; DE 93-21 at 3; Anna Lou Dep. at 52:15-52:18; 139:19-140:1, 140:5-140:14; Douglas Dep. at 18:3-18:11, 46:25-47:15; LuAnn Dep. at 51:9-52:6.) In January 2013, Anna Lou and LuAnn also saw QMC filings showing Defendants' ownership in QMC. (DE 94-1 at 2; LuAnn Dep. 36:16-36:20, 37:22-39:2.) However, given that Josh lied about his interest in QMC shortly after, a reasonable jury could still find that Tarter Industries should not have known about the conflict of interest until after January 2013. (Josh Dep. at 140:10-142:25.)

Therefore, the Court denies Defendants' motion for summary judgment as to their acquiescence defense, but Defendants may pursue the defense at trial.

### 2.     Substantive Merit of Claims

Separately, Defendants also argue that certain claims raised by Tarter Industries lack substantive merit and move for summary judgment on that ground.

### a.     Breach of Fiduciary Duty Claims

A breach of fiduciary duty claim arises when "(1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach." *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016) (citation and quotation marks omitted). "The scope of the fiduciary duty has been variously defined as one requiring utter good faith or honesty, loyalty or obedience, as well as candor, due care, and fair dealing." *Id.* (citation and quotation marks omitted). When a fiduciary is aware of a conflict between his private interest and corporate interest, he must fully disclose those circumstances to the corporation "without

ambiguity or reservation." *Patmon v. Hobbs*, 280 S.W.3d 589, 596 (Ky. Ct. App. 2009) (citation and quotation marks omitted).

Defendants' argument that Tarter Industries cannot prove its breach of fiduciary claims is two-fold. First, Defendants did not breach any fiduciary duty because they actually acted in the "best interests" of Tarter Industries. (DE 93 at 25.) Second, Tarter Industries' officers knew and consented to its transactions with QMC. (*Id.* at 23.)

To support their contention that they acted in Tarter Industries' best interests, Defendants point to evidence indicating that the supply chain they created via QMC resulted in increased revenue for Tarter Industries and enabled it to compete in the three-point equipment industry. (Cox. Dep. at 130:20-130:23; Josh Dep. at 88:6-88:13.) However, evidence also shows that Defendants personally profited $11 million as a result of allegedly driving business from Tarter Industries to QMC. (DE 92-1 at 2-16; Josh Dep. at 114:22-115:6.) This is enough to create a genuine dispute regarding whether Defendants acted contra to Tarter Industries' interests in breach of Defendants' fiduciary duties to that company.

Defendants also allege that they are not liable for breach of fiduciary duty because Donald and Anna Lou both had knowledge of Defendants' interest in QMC and consented to the transactions with that knowledge. (*See* DE 93 at 23 (citing Rest. (Second) of Agency § 390 cmt. a and *Stewart v. Kentucky Paving Co.*, 557 S.W.2d 435, 437 (Ky. Ct. App. 1977)).) For the reasons discussed *supra*, Anna Lou's actual knowledge of Defendants' interests in QMC is disputed and not a basis for summary judgment. Moreover, Donald's knowledge and his power to consent to the transactions between QMC and Tarter Industries is also disputed. Defendants claim Donald knew and approved of their interests in QMC when it was founded in 2010. (Donald Dep. at 16:18-18:14.) But Tarter Industries submits evidence indicating that Donald did not know about QMC. (Nell Dep. at 16:16-17:12.) Similarly, Defendants

identify Donald as holding the highest leadership position across the Tarter Companies, (*see* DE 93-7 at 2; Anna Lou Dep. at 43:20-44:1; Cox Dep. at 29:21-30:1; Osborne Dep. at 9:7-9:22;), while Tarter Industries provides proof that he did not focus on the aspect of the business that involved three-point equipment, (David Dep. at 12:10-12:14).

Because genuine disputes of material fact remain regarding Anna Lou and Donald's knowledge and their consent to Tarter Industries' transactions with QMC, the Court denies Defendants' motion as to the breach of fiduciary duty claims.[10]

### b.      Fraud and RICO Claims

RICO provides a civil remedy for individuals "injured by virtue of certain types of unlawful activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). To state a substantive RICO claim under 18 U.S.C. § 1962(c), plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 422 (6th Cir. 2013) (citations and quotation marks omitted). To establish a RICO conspiracy claim under 18 U.S.C. § 1962(d), the plaintiff must prove all of the elements of a substantive RICO claim plus "the existence of an illicit agreement to violate" any of RICO's criminal provisions. *Id.* (citations and quotation marks omitted).

In proving a fraud by misrepresentation claim, a plaintiff must establish by clear and convincing evidence that (1) the defendant made a "material representation"; (2) the representation was false; (3) the defendant "knew the representation was false or made it recklessly;" (4) the defendant induced the plaintiff to act on the misrepresentation; (5) the plaintiff reasonably relied on the representation; and (6) the misrepresentation caused injury

---

[10] The same analysis applies to the aiding/abetting breach of fiduciary duty claim against Gregory. *Osborn*, 865 F.3d at 440.

to the plaintiff.  *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 45 (Ky. 2018).  In contrast, a fraud by omission claim requires the plaintiff to prove "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011).

In moving for summary judgment on Tarter Industries' RICO and fraud claims, Defendants argue that "[Tarter Industries] acknowledge[s] there was nothing false about the QMC invoices because they accurately stated the products delivered and did not omit material information." (DE 93 at 25.)  Defendants mischaracterize the nature of the evidence that they cite to support this argument and the nature of the fraud alleged.  In her deposition, Anna Lou testified that she could not attest to the falsity of a QMC invoice that was shown to her and could not confirm if the quantity listed on the invoice was actually shipped to Tarter Industries.  (Anna Lou Dep. 62:1-62:5.)  Without definitively stating whether QMC shipped the correct quantity or published false invoices, Anna Lou only stated that the lawsuit did not involve claims that QMC failed to provide the products as listed in the relevant invoices.  (*Id.*)  Moreover, as alleged, Tarter Industries is pursuing claims that Defendants failed to disclose their interests in QMC, substantially inflated the price of the QMC products that Tarter Industries purchased, and diverted profits for themselves.  (*See* Compl. ¶¶ 5, 229, 237).)  Defendants also mention that Tarter Industries brings its fraud and RICO claims based on the theory that their fraudulent actions caused damage.  (DE 93 at 24-25.)  For purposes of defeating summary judgement, Tarter Industries has submitted sufficient evidence showing that Defendants caused it damage by personally profiting $11 million as result of their alleged scheme.  (DE 92-1 at 2-16; Josh Dep. at 114:22-115:1-6.)

Therefore, Defendants' motion for summary judgment as to the substantive merits of Tarter Industries' fraud and RICO claims is denied.

### c.      State and Federal Trade Secret Claims[11]

Throughout their motion for summary judgment, Defendants contend that Tarter Industries has not submitted any evidence establishing that Defendants misappropriated or caused QMC to misappropriate trade secrets.  (DE 93 at 10-11, 22 n.22, 25.)  Defendants also point to a lack evidence showing that Tarter Industries suffered any damages from the alleged misappropriation of trade secrets.  (*Id.* at 11.)  In response, Tarter Industries simply states, "[n]o other supplier had access to Tarter Company trade secrets" without providing further evidence.  (DE 96 at 6.)

The moving party bears the initial burden to show the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  The moving party meets this burden "simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial."  *Jones v. Smith-McKenney Co.*, No. 3:05-CV-62-JMH, 2006 WL 229880, at *2 (E.D. Ky. Jan. 31, 2006).  "The burden then shifts to the nonmoving party to come forward with *some* probative evidence to support its claim."  *Id.* (emphasis added) (citation and quotation marks omitted).  A plaintiff's own original allegations and conclusory statements cannot defeat a motion for summary judgment.  *Harding v. United States*, Civil Action No. 04-CV-255-HRW, 2006 WL 3193377, at *4 (E.D. Ky. Nov. 1, 2006).

---

[11] While Defendants briefly raise a statute of limitations defense against the pending trade secret claims (DE 93 at 22 n.22), the Court does not analyze this defense as to those claims. The trade secret claims are best resolved by examining the quantity of evidence that Tarter Industries has submitted (or failed to submit) in support of them.

Defendants have met their burden to show an absence of evidence on whether they misappropriated (or caused misappropriation of) trade secrets and whether such appropriation caused Tarter Industries damage. However, in response, Tarter Industries has not submitted <u>any</u> evidence to establish its trade secrets claims. Tarter Industries has only advanced its trade secrets claims through its original allegations in its initial complaint and a single conclusory statement in its response to Defendants' motion for summary judgment. "The Court will not search the record and make [Tarter Industries'] case for [it]." *Martin v. W. Kentucky Univ.*, No. 1:11-CV-37, 2012 WL 693928, at *3 (W.D. Ky. Feb. 29, 2012).

Due to Tarter Industries' lack of evidence and the absence of a genuine dispute of material fact pertaining to these claims, the Court will grant Defendants' motion for summary judgment on Tarter Industries' remaining trade secrets claims. Accordingly, the Court dismisses the rest of Tarter Industries' trade secrets claims (Counts III, VI, and VIII).

### C.    Tarter Industries' Motion for Partial Summary Judgment

As found in the Court's discussion of Defendants' motion for summary judgment, genuine disputes of material fact remain regarding the applicability of Defendants' statute of limitations, ratification, and acquiescence defenses. Because these defenses potentially bar Tarter Industries' remaining claims, the Court need not reach Tarter Industries' motion for partial summary judgment. Accordingly, the Court denies Tarter Industries' motion for summary judgment as moot.

### IV.    Conclusion

The Court hereby orders as follows:

1.    Plaintiffs' motion to alter or amend the Court's March 25, 2022 Opinion and Order (DE 108) is GRANTED in part and DENIED in part;

2.         Defendants' motion for summary judgment (DE 93) is GRANTED in part and DENIED in part;

3.         Plaintiff Tarter Industries' motion for summary judgment (DE 91) is DENIED as moot;

4.         Plaintiff Tarter Industries may proceed to trial on Counts I (RICO), II (RICO conspiracy), IX (breach of fiduciary duty), X (aiding/abetting breach of fiduciary duty), XI (fraudulent misrepresentation), XII (fraudulent concealment/fraud by omission), XIII (usurpation of corporate opportunity), and XIV (unjust enrichment); and

5.         This matter IS SET for a Telephonic Status Conference on MARCH 23, 2023 at 3:00 p.m.  The Court will send an e-mail with call information to counsel of record at the e-mail addresses listed in CM/ECF, one week prior to the conference.

This 22nd day of February, 2023.


KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY